UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
GARDEN CITY BOXING CLUB, INC.,                          :

                        Plaintiff,          :    04 Civ. 2081 (LAP) (DF)

                  -against-                 :    **REPORT AND**
                                                               **RECOMMENDATION**
MIRALDO DE JESUS HERNANDEZ, Individually    :
and as officer, director, shareholder and/or principal of
MIRALDO RESTAURANT CORP. d/b/a MIRALDO      :
RE ST AURANT a / k / a ESMERALDO
RESTAURANT, et al.,                                     :

and                                                     :

MIRALDO RESTAURANT CORP. d/b/a MIRALDO      :
RESTAURANT a/k/a ESMERALDO RESTAURANT,
                                                                :
                      Defendants.
------------------------------------------------------------------------X

**TO THE HONORABLE LORETTA A. PRESKA, U.S.D.J.:**

## INTRODUCTION

On March 16, 2004, plaintiff Garden City Boxing Club, Inc. ("Garden City") filed a

Complaint with this Court, alleging violations of the Communications Act of 1934, 47 U.S.C.

§§ 553 and 605 (1996), by defendant Miraldo Restaurant Corp. d/b/a Miraldo Restaurant a/k/a

Esmeraldo Restaurant ("Miraldo").[1] (Dkt. 1.) When Miraldo failed to respond to the Complaint,

---

[1] The Complaint, as filed, also named as a defendant Miraldo De Jesus Hernandez, individually and as an officer, director, shareholder and/or principal of Miraldo. It appears from the docket, however, that Mr. Hernandez was never served with process (*see* Dkt. 4), and that Plaintiff only requested and was granted a default judgment as against defendant Miraldo (*see* Dkt. 5, 6). It also appears that Garden City has attempted to dismiss its claims against Mr. Hernandez, although its Notice of Partial Dismissal was not properly filed. (*See* Dkt. 7.) Under the circumstances, this Report and Recommendation will only address Plaintiff's damages claim against Miraldo.

the Court (Preska, J.) granted a default judgment against it (*see* Dkt. 6), and the matter was referred to me on July 19, 2007, to conduct an inquest and to report and recommend concerning Garden City's damages (Dkt. 11). For the reasons that follow, I recommend that Garden City be awarded damages plus attorney's fees and costs, as calculated below, on the default judgment against Miraldo.

## BACKGROUND

As alleged in Garden City's Complaint and supported by the documentation submitted by Garden City in support of its Proposed Findings of Fact and Conclusions of Law, the relevant facts are as follows:

Garden City is a California corporation with its principal place of business at 2380 South Bascom Avenue, Suite 200, Campbell, California 95008. (*See* Complaint, dated Feb. 11, 2004 ("Compl.") (Dkt. 1), at ¶ 5.) Miraldo is a business with its principal place of business at 932 Columbus Avenue, New York, New York 10025. (*See id.*, at ¶ 7; Proposed Findings of Fact and Conclusions of Law Regarding Damages, dated Oct. 30, 2007 ("Proposed Findings"), at ¶ 2.)

On May 3, 2003, boxers Oscar De La Hoya and Yori Boy Campas were scheduled to appear in a boxing match. (*See* Compl., at ¶ 12; Proposed Findings, at ¶ 3.) Garden City obtained the right to distribute the De La Hoya/Campas fight, together with selected "undercard" bouts, in a live broadcast, to establishments in New York that wished to exhibit the fight publicly to their patrons. (*See* Compl., at ¶ 13; Plaintiff's Memorandum of Law in Support of Damages, dated Oct. 30, 2007 ("Pl. Mem.")[2] (Dkt. 13), Ex. A (Affidavit of Joseph Gagliardi, sworn to

---

[2] Plaintiff's Memorandum of Law it is not paginated; where the Court refers herein to any pages of that memorandum, the Court will designate the first page as "page one."

2

May 10, 2004 ("Gagliardi Aff."), at ¶ 3 and Exs. A (Closed Circuit Television License Agreement), B (Closed Circuit Rate Card).) Garden City then hired independent investigators to identify establishments that exhibited the fight without first securing from Garden City the right to do so. (*See* Proposed Findings, at ¶ 6; Gagliardi Aff., at ¶ 7.)

One such investigator, Richard Rodriguez, visited Miraldo on the night of the fight. (*See* Gagliardi Aff., Ex. C (Affidavit of Richard Rodriguez, sworn to May 9, 2003 ("5/9/03 Rodriguez Aff."), at 1-2).) Rodriguez entered Miraldo at approximately 10:15 p.m., joining approximately 30 people in the establishment. (*See id.*) Upon entering Miraldo, Mr. Rodriguez saw, in the dining area of the restaurant, a 25-inch television set, on which Garden City's propriety broadcast of one of the undercard bouts was being shown.[3] (*See id.*) According to Garden City, however, it had never received payment from Miraldo to secure broadcast rights to either the De La Hoya/Campas fight or any of the related undercard bouts, and it had never given Miraldo authorization to exhibit those fights. (*See* Compl., at ¶¶ 15, 23, 29; Proposed Findings, at ¶ 9.)

On March 16, 2004, having discovered Miraldo's unauthorized use of the fight broadcast, Garden City filed this action, alleging that, by exhibiting the broadcast without permission, Miraldo had violated the Communications Act of 1934. (*See* Compl., at ¶¶ 20, 26, 33.) Miraldo failed to respond to the Complaint, and, as noted above, a default judgment was entered against it, and the matter was referred to me for a damages inquest. (*See* Dkts. 6, 11.) To date, Miraldo has not responded to Garden City's submissions with respect to its claimed damages, nor has

---

[3] Specifically, Mr. Rodriguez states that he observed the third round of the boxing match between "undercard fighters Erik Morales and Fernando Velardez." (*See id.*) This was one of the undercard bouts for which Garden City had obtained distribution rights, together with its right to distribute the De La Hoya/Campas fight. (*See* Gagliardi Aff., Ex. B.)

3

Miraldo requested a hearing with respect to damages. I therefore issue this report and recommendation based solely on Garden City's submissions.

## DISCUSSION

In its Proposed Findings, Garden City has requested an award of up to $110,000 against Miraldo, plus interest at nine percent per annum from the date of the alleged violation. (*See* Proposed Findings, at ¶¶ 13-14; Gagliardi Aff., at ¶ 13.) Garden City has further requested reimbursement for attorney's fees and costs totaling $965. (*See* Pl. Mem., Ex. B (Affidavit of Julie Cohen Lonstein, sworn to June 18, 2007 ("Lonstein Aff."), at ¶ 3).)[4] Without a response from Miraldo as to the damages issue, this Court must assess whether Garden City has sufficiently demonstrated that it is entitled to the amounts in question.

Although "a default judgment entered on well-pleaded allegations in a complaint establishes defendant's liability," it does not reach the issue of damages. *Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995) (quoting *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 69 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973)). A plaintiff must therefore substantiate a claim with evidence to prove the extent of damages. *See Trehan v. Von Tarkanyi*, 63 B.R. 1001, 1008 n.12 (S.D.N.Y. 1986) (plaintiff must introduce evidence to prove damages suffered and the court will then determine whether the relief flows from the facts) (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)). Although a court may hold a hearing to assess damages, a hearing is not required where the plaintiff provides the court

---

[4] While Plaintiff's memorandum of law and supporting counsel affidavit both state that the total of Plaintiff's requested fees and costs in this case is $675 (*see* Pl. Mem., at 9; Lonstein Aff., at ¶ 8), this appears to be in error, as counsel, in her affidavit, documents filing fees of $150, service of process costs of $140, and attorney's fees of $675 (*see* Lonstein Aff., at ¶ 3), for a total of $965.

4

with evidence sufficient to permit a damages calculation. *See* Fed. R. Civ. P 55(b)(2) (a court may conduct hearings on damages "as it deems necessary and proper"); *see also Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993) (district judges are given much discretion to determine whether an inquest need be held); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991) (Fed R. Civ. P. 55(b)(2) "allows but does not require . . . a hearing").

**I.    DAMAGES**

The unauthorized interception and reception of any radio or cable communication services, which originate and are delivered by satellite or any other means, is an express violation of 47 U.S.C. §§ 553(a)(1)[5] and 605(a).[6] *See e.g., Time Warner Cable of New York City v. Barnes*, 13 F. Supp. 2d 543, 547-48 (S.D.N.Y. 1998) (citing *Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123, 133 (2d Cir. 1996)); *Cablevision Sys. New York City Corp. v. Lokshin*, 980 F. Supp. 107, 112 (E.D.N.Y. 1997).

In situations where a defendant's conduct has violated both Sections 553 and 605 of the Communications Act, a plaintiff may recover damages under only one of those sections. *See Sykes*, 75 F.3d at 129; *Barnes*, 13 F. Supp. 2d at 548. Here, Garden City has specified that it seeks relief under Section 605(a). (*See* Pl. Mem., at 3.) Where liability is found under Section 605(a) of the Communications Act, a plaintiff may choose to recover either actual damages

---

[5] 47 U.S.C. § 553(a)(1) provides, in pertinent part: "No person shall intercept or receive . . . any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."

[6] 47 U.S.C. § 605(a) provides, in pertinent part: "No person not being authorized by the sender shall intercept any radio communication and divulge or publish the . . . contents . . . of such intercepted communication to any person." As the Second Circuit noted in *Sykes*, Section 605 "not only prohibits unauthorized interception of traditional radio communications, but also communications transmitted by means of new technologies," including satellite communications. *Sykes*, 75 F.3d at 133.

5

under § 605(e)(3)(C)(i)(I), or statutory damages under § 605(e)(3)(C)(i)(II). Garden City has elected to seek the latter. (*See* Pl. Mem., at 3; Proposed Findings, at ¶ 13.)

Because it had a proprietary interest in the intercepted communications, Garden City is a "person aggrieved" within the meaning of 47 U.S.C. § 605 (d)(6),[7] and is entitled to bring this action. An aggrieved person may obtain statutory damages of $1,000 to $10,000 for each violation of Section 605(a), as per Section 605(e)(3)(C)(i)(II). The Court may also increase the award by up to $100,000, if it finds that the violation of Section 605(a) "was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). The Court is to award these statutory damages "as [it] considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II).

In this case, Garden City has requested the maximum damages allowed by statute, totaling $110,000 ($10,000 for the violation, plus $100,000 in enhanced damages), against Miraldo. (*See* Proposed Findings, at ¶ 12-14.) Garden City has further requested interest on the award, at the rate of nine percent per annum, from May 3, 2003, as well as litigation fees. (*See id.*, at ¶ 14; Gagliardi Aff., at ¶ 13.)

### A. Statutory Damages in This Case

In determining the base amount of damages to award in cases like this one, some courts have based their calculations on the number of patrons present in the establishment when the unauthorized display occurred. *See, e.g., Time Warner Cable of New York City v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) (Grubin, M.J.) (awarding $50 per

---

[7] Section 605(d)(6) provides, in pertinent part, that "the term 'any person aggrieved' shall include any person with proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programming."

6

patron, as that was approximately the amount charged residential purchasers, while noting that commercial licenses usually range from $500 to $1,500), *report & recommendation adopted*, 77 F. Supp. 2d at 485-86; *Cablevision Sys. Corp. v. 45 Midland Enters., Inc.*, 858 F. Supp. 42, 45 (S.D.N.Y. 1994) (finding an award of $50 per patron to be "eminently reasonable"); *Time Warner Cable of New York City v. Taco Rapido Restaurant*, 988 F. Supp. 107, 111 (E.D.N.Y. 1997) (awarding $50 per patron). Other courts have awarded a flat sum. *See, e.g., Garden City Boxing Club, Inc. v. DeBlasio*, No. 02 Civ. 6669 (GEL) (JCF), 2003 WL 22144395, at *4 (S.D.N.Y. Sept. 8, 2003) (awarding flat sum of $5,000, while noting that a commercial license would have cost the defendant $500, calculated on the basis of $20 per patron, at an establishment with a 25-person capacity).

Here, while the record indicates that Garden City licensed the broadcasting rights to the De La Hoya/Campas fight to commercial establishments for either $1,300 (for venues with a capacity of up to 50 people) or $1,800 (for venues with a capacity of 51 to 100 people) (*see* Gagliardi Aff., Ex. B (Garden City's Closed Circuit Rate Card)), the record is unclear as to which amount Garden City would have charged Miraldo for such a license, as Garden City has submitted inconsistent evidence regarding Miraldo's capacity.[8] Regardless of how large the

---

[8] While Mr. Rodriguez's affidavit states that, in his opinion, the approximate capacity of the establishment on May 3, 2003 was 60 people (*see* 5/9/03 Rodriguez Aff., at 1), other submissions made by Garden City to the Court approximate Miraldo's capacity to have been 50 people or fewer. Specifically, Garden City has submitted another investigator's affidavit, detailing an alleged October 4, 2003 incident of unauthorized broadcasting, estimating the capacity of the restaurant at that time to have been 20 people. (*See* Lonstein Aff., Ex. B (Affidavit of Timothy Gansrow, sworn to Oct. 9, 2003 ("Gansrow Aff.")), at 1.) Garden City has also submitted a second affidavit of Mr. Rodriguez, concerning an alleged November 8, 2003 incident of unauthorized broadcasting, in which he estimated the restaurant's capacity to have been 40 people. (*See* Lonstein Aff., Ex. C (Affidavit of Richard Rodriguez, sworn to Nov. 14, 2003 ("11/14/03 Rodriguez Aff.")), at 1.)

7

venue was, however, the record reflects that Mr. Rodriguez counted approximately 30 patrons in Miraldo when the fight was shown (*see* 5/9/03 Rodriguez Aff., at 1), and that Garden City charged residential consumers $54.95 for pay-per-view access to the fight (*see* Gagliardi Aff., at ¶ 9(B)). Accepting Mr. Rodriguez's estimate that 30 patrons were present the night of the fight, and then assessing damages at $50 per person (an amount that other courts have used and that approximates the residential customer rate charged by Garden City), would result in an award of $1,500. Such an award would fall within the range of permissible statutory damages, *see Googies Luncheonette, Inc.,* 77 F. Supp. 2d at 485; *see also DeBlasio,* 2003 WL 22144395, at *4, and would at least approximate Garden City's commercial rates for licensing the broadcast.

Although Garden City seeks the statutory maximum of $10,000 for a single violation, such an award should be reserved for cases where there is greater evidence of injury to the plaintiff or profit by the defendant. *See DeBlasio*, 2003 WL 22144395, at *4. Here, apart from the loss to Garden City of its customary commercial fee, there is no evidence of other injury to Garden City or profit by Miraldo. As to Miraldo's profit, there is no evidence, for example, that Miraldo collected a cover charge on the date of the fight, or charged a premium for food or beverages. Indeed, there is no evidence of any kind in the record regarding Miraldo's food or beverage sales, and, without such evidence, "no [profit] award can be made for those sales." *Googies Luncheonette, Inc.,* 77 F. Supp. 2d at 490.[9]

---

[9] To the extent it may be desirable to award Garden City some amount representing the profit made by Miraldo by showing the fight, the Court notes that calculating an award based on $50 for every patron in the establishment that night would presumably reflect an amount greater than Garden City could have obtained from individual subscriptions, as not every patron would have otherwise ordered the fight individually. As noted in *Googies Luncheonette,* the presumed increase "can be seen to encompass [the establishment's] profits on the sale of food and drink." *Id.*

Accordingly, I recommend that Garden City be awarded a base amount of $1,500 in statutory damages from Miraldo.

## B. Enhancement of Damages

Garden City further requests that, under 47 U.S.C. § 605(e)(3)(C)(ii), its damages be enhanced, as Miraldo's violation of Section 605 was purportedly both "willful" and "for commercial gain."[10] (Proposed Findings, at ¶¶ 9, 12.) Specifically, Garden City requests that its damages be increased by the statutory maximum of $100,000. (*See id*., at ¶ 13.)

"Courts use a variety of factors in determining whether a defendant's conduct is subject to enhanced damages for willfulness, such as allegations of: (1) repeated violations over an extended period of time; (2) substantial unlawful monetary gains; (3) significant actual damages to plaintiff; (4) defendant's advertising for the intended broadcast of the event; and (5) defendant's charging a cover charge or charging premiums for food and drinks." *Kingvision Pay-Per-View Ltd. v. Rodriguez*, No. 02 Civ. 7972 (SHS), 2003 WL 548891, at *2 (S.D.N.Y. Feb. 25, 2003).

Although it can be reasonably inferred that Miraldo generated some revenue by showing the De La Hoya/Campas fight, Garden City makes no allegation that Miraldo reaped "substantial" monetary gains by its unlawful exhibition of the broadcast. Nor does Garden City clearly delineate the actual damages that it suffered, in the form of its lost license fees or

---

[10] Section 605(e)(3)(C)(ii) provides, in pertinent part, that "[i]n any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a)."

9

otherwise. There is also no evidence of Miraldo having advertised the broadcast, and, as discussed above, there is no basis in the record for finding that the establishment required patrons to pay a cover charge to see the fight, or premiums for food or drink.

Garden City does, however, allege that Miraldo's display of the fight could not have been accidental. (*See* Gagliardi Aff., at ¶ 9.) Garden City has outlined some potential means by which Miraldo could have unlawfully intercepted the program, including obtaining and installing an unauthorized "descrambler," misrepresenting Miraldo as a residential purchaser, or splicing the program from an adjacent residence. (*See id*.) In any event, Garden City argues that the fight in question could not have been "mistakenly or innocently intercepted," and therefore that Miraldo's conduct must have been willful. (*See id*.) Additionally, as mentioned above (*see supra* at n.8), Garden City submits two affidavits of investigators, dated October 9, 2003 and November 14, 2003, alleging subsequent violations at the Miraldo establishment. (*See generally,* Gansrow Aff.; 11/14/03 Rodriguez Aff.) The Court also notes that, through its own research, it has found at least one other instance in which this establishment apparently intercepted a broadcast transmission, was sued for the violation, and defaulted. *See Entm't by J&J, Inc. v. Miraldo Rest., Inc., et al.*, No. 01 Civ. 10832 (RMB) (MHD), 2003 U.S. Dist. LEXIS 11361 (S.D.N.Y. Apr. 22, 2003) (Dolinger, M.J.), *report & recommendation adopted*, 2003 U.S. Dist. LEXIS 9624 (S.D.N.Y. June 10, 2003). The inquest in that case resulted in a total judgment against Miraldo of $5,000, *see id.* at *14, seemingly not enough to deter Miraldo from its unlawful conduct.

Other courts, on the basis of similar factual allegations, have awarded enhanced damages. *See*, *e.g., Garden City Boxing Club, Inc. v. Paquita's Cafe, Inc.*, No. 06 Civ. 6953 (RMB) (JCF),

2007 WL 2783190, at *5 (S.D.N.Y. Sept. 26, 2007) (Francis, M.J.) (recommending award of $10,000 in enhanced damages when taking into account the need to deter future violations) *report & recommendation adopted,* 2007 WL 2981928 (S.D.N.Y. Oct. 10, 2007); *Kingvision Pay-Per-View, Ltd. v. Jasper Grocery*, 152 F. Supp. 2d 438, 442 (S.D.N.Y. 2001) (awarding enhanced damages of $10,000); *Googies Luncheonette, Inc.*, 77 F. Supp. 2d at 491 (awarding $8,000 in enhanced damages where the defendant had a prior violation and default); *Entm't by J&J, Inc. v. Ramsarran*, No. 01 Civ. 5223 (RR) (JMA), 2002 WL 720480, at *2 (E.D.N.Y. Mar. 11, 2002) (finding an award of $10,000 in enhanced damages to be "fair and reasonable").

Based on the record presented in this case and to achieve the statutory goal of deterrence, I recommend that Garden City be awarded enhanced damages of $10,000 from Miraldo, in addition to the $1,500 discussed above.

## II. ATTORNEYS' FEES AND COSTS

Where a Section 605 violation has been demonstrated, a plaintiff is entitled to recover reasonable attorneys' fees and costs. *See* 47 U.S.C. § 605(e)(3)(B)(iii). Garden City seeks attorneys' fees and costs in this case and has set out and documented certain expenses it incurred in prosecuting this action against Miraldo. (*See* Lonstein Aff., at ¶¶ 3, 4.)

In determining appropriate attorneys' fees, the so-called "lodestar" method – or, in language recently adopted by the Second Circuit, the method of multiplying an attorney's reasonable hours by a reasonable hourly rate for the services performed, so as to determine a "presumptively reasonable fee," *see Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 189-94 (2d Cir. Apr. 10, 2008), *amending and superseding* 493 F.3d 110 (2d Cir. 2007) – is "the most useful starting point" in determining an appropriate fee

award, *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). When the Court employs this method to determine an appropriate attorneys' fee award, the party seeking fees has the burden of demonstrating that its requested fees are reasonable. *See Blum v. Stenson,* 465 U.S. 886, 897 (1984). To that end, a fee application must be supported by contemporaneous time records that "specify, for each attorney, the date, the hours expended, and the nature of the work done." *N.Y. State Ass'n for Retarded Children v. Carey,* 711 F.2d 1136, 1148 (2d Cir. 1983).

When fixing a reasonable rate for attorneys' fees, courts may consider and apply "market rates 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). In addition, a court may rely on its "own knowledge of private firm hourly rates in the community" in determining reasonable attorneys' fees. *Miele v. New York State Teamsters Conference Pension & Retirement Fund*, 831 F.2d 407, 409 (2d Cir. 1987). Generally, the relevant community is "the district in which the court sits," *Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1159 (2d Cir. 1994) (internal quotation marks and citation omitted), although, sometimes, the legal market may be defined otherwise, such as by "practice area," *Arbor Hill*, 522 F.3d at 192.

In this matter, Plaintiff seeks $675 in attorneys' fees and $290 for costs. Garden City's attorney, Julie Cohen-Lonstein, Esq., has submitted an affidavit detailing 3.00 hours spent on this matter by counsel at an hourly rate of $200.00, and 1.00 hour spent by a paralegal at an hourly rate of $75.00. (Lonstein Aff., at ¶ 4.) Based on the Court's review of Ms. Lonstein's affidavit and the relevant case law, the requested amount of $675 in legal fees is comparable to awards in similar cases and is reasonable. *See, e.g., Paquita's Cafe, Inc.*, 2007 WL 2783190, at

*5 (awarding $700 in attorneys' fees); *Miraldo Rest., Inc., et al.*, 2003 U.S. Dist. LEXIS 11361, at *15 (awarding $750 in attorneys' fees). Accordingly, I recommend that Garden City be awarded a total of $675 in legal fees as detailed above.

Garden City further seeks a total of $290 in litigation costs, including $150 for filing fees (*see* Lonstein Aff., at ¶ 3) and $140 for fees charged by a process server (*id.*, Ex. A (Pro-File Lawyer's Service Corp. invoice)). Based on the submitted documentation, the amounts sought appear reasonable and are properly recoverable, and I therefore recommend that Plaintiff's requested costs of $290 be awarded.

### III. PRE-JUDGMENT INTEREST

Garden City further requests an award of pre-judgment interest at the rate of nine percent per annum from the date of the fight, May 3, 2003. (*See* Gagliardi Aff., at ¶ 13.) Although no statute authorizes an award of pre-judgment interest for violations of sections 553 and 605 of the Communications Act, a district court has discretion to impose a pre-judgment interest award "to make a plaintiff whole." *Williams v. Trader Publ'g Co.*, 218 F.3d 481, 488 (5th Cir. 2000); *see Garden City Boxing Club, Inc. v. Rojas*, No. CV-05–1047 (DGT), 2006 WL 3388654 (E.D.N.Y. Nov. 21, 2006). Further, the Second Circuit has recognized that pre-judgment interest may be permitted without express statutory authorization "when the awards [are] fair, equitable and necessary to compensate the wronged party fully." *Wickham Contracting Co., Inc. v. Local Union No. 3, IBEW*, 955 F.2d 831, 836 (2d. Cir. 1992), *cert. denied*, 506 U.S. 946 (1992).

Here, if enhanced damages are awarded as recommended above, it is likely that Plaintiff would be made whole by the total award, without need for pre-judgment interest to serve that purpose. *See, e.g., Garden City Boxing Club, Inc. v. Ayisah,* No. 02 Civ. 6673 (GBD) (DF),

2004 U.S. Dist. LEXIS 7867, at *16 (S.D.N.Y. Apr. 28, 2004) (Freeman, M.J.) (recommending that the Court decline to award pre-judgment interest, on similar facts, because "plaintiff [would] be more than fully compensated for its lost licensing fees and any interest it could have earned on such fees" by virtue of the damages otherwise awarded by the court (quoting *Garden City Boxing Club, Inc. v. Orama*, No. 02 Civ. 6670 (LAK) (LMS), (S.D.N.Y. Aug. 12, 2003) (Smith, M.J.), *report & recommendation adopted*, 2003 U.S. Dist. LEXIS 15659 (S.D.N.Y. Sept. 15, 2003)), *report & recommendation adopted by* Order, dated June 7, 2004 (Daniels, J.) (Dkt. 28).

In any event, since the recommended statutory and enhanced damages are, in part, punitive, an award of pre-judgment interest is not appropriate in this case. *See Wickham Contracting Co., Inc.*, 955 F.2d at 834 (noting that pre-judgment interest should not be awarded "if the statutory obligation on which interest is sought is punitive in nature"); *Garden City Boxing Club, Inc. v. Guerra*, 05-CV-3712 (SLT), 2007 WL 539156, at *5 (E.D.N.Y. Feb. 16, 2007) (declining to award pre-judgment interest "because New York law does not award pre-judgment interest on punitive damages, and damages under § 605 are 'analogous to punitive damages in that they are designed to deter others from similar infringing activity'" (quoting *Kingvision Pay-Per-View, Ltd. v. Olivares*, No. 02 Civ. 6588 (JES) (RLE), 2004 WL 744226, at *5 (S.D.N.Y. Apr. 5, 2004) (Ellis, M.J.), *report & recommendation adopted by* Order, dated June 14, 2004 (Sprizzo, J.) (Dkt. 17)); *Paquita's Cafe, Inc.*, 2007 WL 2783190, at *5, n.6 (same); *Garden City Boxing Club, Inc. v. Rosado*, No. CV-05-1037 (DLI) (JMA), 2005 U.S. Dist. LEXIS 27108, at *12-14 (E.D.N.Y. Oct. 6, 2005) (Azrack, M.J.), *report & recommendation adopted*, 2005 U.S. Dist. LEXIS 29744 (E.D.N.Y. Nov. 9, 2005).

This Court therefore recommends that Garden City not be awarded pre-judgment interest in this case.

## CONCLUSION

For the reasons set forth above, I recommend:

(1) that judgment be entered in favor of Garden City Boxing Club, Inc., against defendant Miraldo Restaurant Corp. d/b/a Miraldo Restaurant a/k/a Esmeraldo Restaurant , in the amount of:

    (a)     $1,500 in statutory damages,

    (b)     $10,000 in enhanced damages, and

    (c)     $965 in attorneys' fees and costs,

for a total of $12,465, and

(2) that no prejudgment interest on damages be awarded in this case.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Loretta A. Preska, United States Courthouse, 500 Pearl Street, Room 1320, New York, New York, 10007, and to the chambers of the undersigned, 500 Pearl Street, Room 525, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Preska. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir.

1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
      October 15, 2008

                                       Respectfully submitted,

                                       DEBRA FREEMAN
                                       United States Magistrate Judge

Copies To:

Hon. Loretta A. Preska, U.S.D.J.

Julie Cohen Lonstein, Esq.
Lonstein Law Office, P.C.
1 Terrace Hill
P.O. Box 351
Ellenville, NY 12428

Esmeraldo Restaurant
932 Columbus Ave.
New York, NY 10025